**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | | |
|---|---|---|
| SONDRA MOORE, and<br>TONY MCDANIEL, | )<br>)<br>) | |
| Plaintiffs, | ) | Civil Action File No. |
| | ) | |
| v. | ) | _____ |
| | ) | |
| ALLAN JOHNSTON, individually,<br>THOMAS MITCHELL, individually, and<br>THE CITY OF STATHAM, | )<br>)<br>) | |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

Plaintiffs Sondra Moore and Tony McDaniel, having filed a motion for preliminary and permanent injunctive relief, file this brief in support thereof showing that they are entitled to an injunction against the "Notice[s] of Prohibited Entry" and allowing them to attend the open meetings of Statham's government, to petition Statham's government as a body and via its individual representatives, and to enter upon the public parks and other public property of the City of Statham.

### STATEMENT OF UNDISPUTED FACTS

1.    Plaintiffs were frequent attendees and participants in the local government meetings and affairs of the City of Statham.

2. Plaintiffs previously lodged criticism of high-ranking Statham officials and representatives.

3. On May 6, 2018, Plaintiffs returned to the area in and around Hillman-Rainwater Park, where they had previously walked with the Mayor of Statham, for the purpose of gathering information ahead of the May 8, 2018 meeting of the water, sewer, and public works subcommittee.

4. While walking along the sewer line, Plaintiffs were approached by Statham Police Department officer Johnny Wood, who told Plaintiffs to leave the area.

5. Plaintiffs complied with the order to leave.

6. Plaintiffs were subsequently arrested for criminal trespass.

7. Plaintiffs were issued orders from the City of Statham stating that they were "forbidden and prohibited" from entering any "property under the control and ownership of the City of Statham, GA 30666," including "all city property," which specifically included "City Hall." *See* Exhibits A & B to Doc. 1.

8. Plaintiff Sondra Moore was arrested pursuant to this order when she attempted to attend a meeting of the Statham City Council.

9. Plaintiffs have not attended or participated in any meetings of the Statham City Council since May 10, 2018 because they reasonably believe and fear they will be arrested and prosecuted should they do so.

-2-

10.     Plaintiffs seek to attend and participate in future Statham City Council meetings and visit other public property in the City.

11.     As soon as any prohibition is lifted, Plaintiffs intend to immediately resume attending and participating in meetings of the Statham City Council.

## ARGUMENT AND CITATION TO AUTHORITY

For the reasons stated below, both preliminary and permanent injunctive relief are appropriate in this case.

## I.     STANDARD FOR INJUNCTIVE RELIEF

A plaintiff seeking a preliminary injunction must establish: (1) a substantial likelihood that plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006); Fed. R. Civ. P. 65(b). A plaintiff need only show a substantial likelihood of success on at least one count of the complaint, not all counts. *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

The legal challenge to the trespass bans is based on the facial validity of those bans, and is not dependent upon, nor impacts, any facts underlying the

-3-

criminal charges or the outcome of those charges.  No evidentiary hearing is necessary here given the undisputed facts and pure legal challenge to the constitutionality of the trespass ban.[1] Furthermore, "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'"[2] Moreover, this is a case where consolidation of the preliminary injunction with permanent injunctive relief is appropriate.[3] Plaintiffs do not

---

[1] *See Cumulus Media, Inc. v. Clear Channel Commc'ns*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." (internal quotations omitted)); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1311 (11th Cir. 1998) (holding that "Rule 65 does not require an evidentiary hearing," and that a hearing is unnecessary where "material facts are not in dispute"); *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1249 (N.D. Ga. 2006) ("The Court does not read Eleventh Circuit precedent to require a trial court to hold an evidentiary hearing whenever facts might be in dispute. The determination of whether the germane facts are 'bitterly contested' is not, as this Court understands it, an exercise in the conceivable, but an assessment made on the papers and arguments in the record.").

[2] *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (quoting *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

[3] *See Drummond v. Fulton Cty. Dep't of Family and Children's Servs.*, 563 F.2d 1200, 1204 (5th Cir. 1977) (holding that such "consolidation represented a responsible exercise of judicial discretion in view of the essentially legal nature of the contest and the need for prompt action on this case"); *Budlong*, 488 F. Supp. 2d at 1248–50

waive any relief, including damages and other claims, in seeking consolidation.

## II.    PLANTIFFS ARE ENTITLED TO AN INJUNCTION AGAINST THE UNCONSTITUTIONAL AND PERMANENT BANS FROM ATTENDING PUBLIC MEETINGS

The criminal trespass bans have numerous and insurmountable constitutional deficiencies.  They were issued without any adjudication of illegal activity. The bans issued to Ms. Moore and Mr. McDaniel have no meaningful nexus with their allegedly improper conduct (here alleged, and as yet unproven, trespass on parkland). The consequence is that government officials, without any standards, have denied permission to appear and speak for citizens who wish to engage in critical free speech activity at City Council meetings.  Moreover, the ban is of undefined duration, leaving in doubt when, if ever, Ms. Moore or Mr. McDaniel can return to the City of Statham or its council meetings.

There are multiple reasons that the criminal trespass bans are unconstitutional. First, when applied to proscribe attendance at City Council meetings by Sondra Moore and Tony McDaniel, the criminal trespass bans strike at the very heart of free expression, and cannot survive free speech review. Second, the trespass bans are a prior restraint because they act to prevent Ms. Moore or Mr. McDaniel from addressing City Council. Third, the trespass bans

---

(analyzing the factors to be considered in consolidating a preliminary injunction with a trial on the merits without the necessity of a hearing).

give law enforcement and city officials standardless discretion as to who to ban from city property and meetings. And fourth, the exclusion of Ms. Moore and Mr. McDaniel from City Council meetings violates the Georgia Open Meetings Act.

### A.  The City Council Meeting is a Limited Public Forum

The City Council meeting, to which the public has been invited to deliver public comment, is a limited public forum.   It is both a public meeting under state law, open to all comers, and includes a public comment session available to all speakers.  *See Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1224 & n.9 (11th Cir. 2017) ("[P]ublic-comment sessions of the Board's meetings and planning sessions are limited public fora").[4]

### B.  The Broad Bans on Attendance/Participation in Government Meetings and Locations Fail First Amendment Scrutiny

[4]  Forum analysis has been developed as a means of weighing whether the Government's interest in regulating speech activity on its property outweighs the interest of those wishing to use property for expressive activity. *See United States v. Kokinda*, 497 U.S. 720, 726 (1990); *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 800 (1985). In traditional public fora and limited public fora, "regulations of the time, place, and manner of expression which are *content-neutral*, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication" are permissible. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987) (*quoting Perry Educ. Ass'n. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45 (1983)) (emphasis added). In contrast, "to enforce a *content-based* exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id.* (emphasis added); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir. 1989).

The indefinite bans on Ms. Moore and Mr. McDaniel's attending City Council meetings and participating in public comments at those meetings flunk free speech review (whether or not the bans are content-based) because the bans are not narrowly tailored and do not leave open ample alternative channels of communication. In *Brown v. City of Jacksonville*, a district court was confronted with a motion for preliminary injunction in which a citizen who had been properly removed from an earlier city council meeting sought to overturn a ban on her attending the subsequent seven city council meetings. No. 3:06-CV-122-J-20MMH, 2006 WL 385085 (M.D. Fla. Feb. 17, 2006). The court had little trouble finding that the plaintiff was entitled to an injunction based on the unconstitutional infringement of her speech. Regarding the requirement of narrow tailoring, the court found that:

> Banning Plaintiff from future meetings is not a restriction that is "narrowly tailored" to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior. Although the City does not have to use the "most appropriate method" of restricting the Plaintiff, it should nonetheless use a directive that is more "narrowly tailored" than a sweeping ban from future meetings for months.

*Brown*, 2006 WL 385085, at *4 (quoting *Jones*, 888 F.2d at 1333). As this Circuit has directly concluded, complete bans are obviously not narrowly tailored. *See*

*Crowder v. Housing Auth. City of Atlanta*, 990 F.2d 591, 593 (11th Cir. 1993) (holding that "Alexander's complete ban was not narrowly tailored to meet her stated security concerns").

The rule found unconstitutional in *Brown* was more narrow than that imposed by the City of Statham. For one, in *Brown*, at least there was some nexus between disruptive behavior at a city council meeting and a subsequent ban from city council meetings; here, any purported trespass has nothing to do with the ability of later city council meetings to proceed unfettered. Second, clearly, a ban that is of a limited duration (*Brown)* is more narrowly tailored than one that persists indefinitely (here).[5] Similarly, any rule that bars citizens from all city council meetings does not leave open ample alternative methods for communicating in a constitutional sense. Again, *Brown* is instructive:

> [B]anning her from future Council meetings does not leave her with an "ample alternative channel of communication." Although the City's directive expressly allows the Plaintiff to "direct [her] communications to the City Council through emails or letters, or have her messages to the Council delivered

---

[5] The duration of the bans in this instance is additionally problematic from a narrow tailoring perspective because the durational terms ("indefinitely") are entirely irrational. The bans last for as long as the criminal cases are pending. Thus, if Ms. Moore and Mr. McDaniel were to plead guilty, they would be immediately permitted to resume their attendance; but if they maintain their innocence, or if a prosecutor declines to move forward with their charges expeditiously as a reflection of the charges' limited merit, Plaintiffs remain unable to attend the government meetings.

by other persons," such alternative channels do not amount to "ample" alternatives that would be comparable to the same degree as her own passionate deliverance of her messages in person at the meetings, to the entire council or an entire council committee meeting, at the same time.

*Brown*, 2006 WL 385085, at \*4; *Crowder*, 990 F.2d at 593 ("[T]he existence of an alternative forum does not provide an independent basis for restricting speech, absent a content-neutral, narrowly tailored regulation").  Compared to the plaintiff in *Brown*, Ms. Moore and Mr. McDaniel are again faced with a worse First Amendment violation in that they are totally banned from all City of Statham property for an indefinite period, effectively precluding them from speaking directly with government officials.

Other cases dealing with banning citizens from government meetings have likewise found speech restrictions involving government meetings to be unconstitutional, including restrictions much more carefully and narrowly drawn than the trespass warnings at issue here*:*

- *Huminski v. Rutland Cty.*, 396 F.3d 53 (2d Cir. 2005) (affirming grant of preliminary injunction against "issuing or enforcing any notices of trespass against Huminski that prevent him from accessing court property where such notices are based solely upon Huminski's public expression of his

political opinions so long as the expression does not disrupt or threaten the orderly performance of court business").

- *Barna v. Bd. of Sch. Directors of the Panther Valley Sch. Dist.*, 143 F. Supp. 3d 205 (M.D. Pa. 2015) (finding constitutional violation in ban of speaker from school board meeting, even after speaker challenged board member to a fight and swore at them).

- *Stevens v. Sch. City of Hobart*, No. 2:13-CV-336-PRC, 2015 WL 4870789 (N.D. Ind. Aug. 6, 2015) (finding that ban from school property of former teacher accused of child molestation was unconstitutional to extent it barred him from school board meetings).

- *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014) (finding a ban from school property to be unconstitutional where parent sought to participate in school meetings because "a categorical ban on speech is not tailored at all, as it entirely forecloses a means of communication" even in the face of online threats by parent).[6]

---

[6] *Cyr* also cited *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994) for the proposition that "the tailoring threshold here is even higher than in *Ward*, as a notice against trespass targeting an individual rather than the public generally is equivalent to an injunction against speech, and the Supreme Court has explained, '[i]njunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances.'" *Id*. at 548.

- *Brown*, 2006 WL 385085, at *6 ("This Court has found no case authorizing a time, place and manner restriction that limits such a length of time for a single disruptive incident.").

Simply put, indefinitely banning citizens from city council meetings—especially frequent attendees—for possibly having trespassed on separate city property is not narrowly tailored to whatever interest the City of Statham might have in the orderly administration of its meetings. This is true even assuming the validity of the trespass warnings, which are obviously and fiercely disputed. Separately, and based on the uniquely significant nature of a local government meeting where the public is entitled to attend and invited to speak, a categorical ban on attendance and participation does not leave open adequate alternative means of communications. Thus, the trespass warnings are constitutionally offensive and must be enjoined.

### C. **The Bans are an Unconstitutional Prior Restraint**

The bans on attending and participating in City Council meetings also violate the First Amendment in that they act as an unconstitutional prior restraint. A prior restraint of expression "exists when the government can deny access to a forum before the expression occurs." *Bourgeois v. Peters*, 387 F.3d 1303, 1319 (11th Cir. 2004). Prior restraint is censorship of the worst kind—it prevents

expression from reaching the marketplace of ideas. *See Southeastern Promotions v. Conrad*, 420 U.S. 557, 559 (1975) ("[A] free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand"). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002); *see also Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) (demands by government officials which threaten potential legal sanction if one continues to speak are prior restraints, even if government officials lack arrest powers because "[p]eople do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around"); *Penthouse Int'l v. McAuliffe*, 610 F.2d 1353, 1369 (5th Cir. 1980) (same).

The criminal trespass bans are a prior restraint that stops speech from happening. The Supreme Court has written that "it has been generally, if not universally, considered that it is the chief purpose of [the First Amendment] to prevent previous restraints upon publication." *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 713- 14 (1931). Thus, "[a]ny prior restraint on expression comes . . . with a heavy presumption against its constitutional validity." *Organization for a Better*

-12-

*Austin v. Keefe*, 402 U.S. 415, 419 (1971); *Bantam Books*, 372 U.S. at 70 (prior restraint "comes to this Court bearing a heavy presumption against its constitutional validity"); *New York Times Co. v. United States*, 403 U.S. 713 (1971) (prohibiting prior restraint of "Pentagon Papers").

Under the prior restraint doctrine, the government cannot prohibit future expressive activity as a result of past unlawful conduct. *Universal Amusement Co. v. Vance*, 587 F.2d 159 (5th Cir. 1978), *aff'd* 445 U.S. 308 (1980) (holding unconstitutional a Texas statute which authorized state judges to enjoin the future exhibition of films by a business that had shown obscene films in the past); *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 507 (6th Cir. 2001) ("[W]here a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech"). Obviously, that rule applies with all the greater force where the past "misconduct" has not been proven (and cannot be proven because it is devoid of even arguable probable cause) and is not even related to the expressive activity.

In striking down a permit ordinance requiring prior approval of the police to demonstrate in a public forum, this Circuit pronounced that "[p]rior restraints are presumptively unconstitutional and face strict scrutiny." *Burke v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1255 (11th Cir. 2004).  To protect speech against

prior restraint, courts have established certain "procedural safeguards" to ensure

a protection against undue delay that would result in unconstitutional

suppression of protected speech. These safeguards that are necessary to ensure

expeditious decision-making regarding the censorship are as follows:

> (1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained;

> (2) expeditious judicial review of that decision must be available; and

> (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court.

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 227-28 (1990).

None of these safeguards were provided to Ms. Moore or Mr. McDaniel.

Indeed, their unadjudicated ban is indefinite, and despite being more than five

months old, no final resolution of their underlying criminal charges appears

forthcoming. Additionally, for all of the reasons that the bans flunk forum

analysis, the bans cannot survive the strict scrutiny review required for prior

restraints.

### D. The Ban on Attendance and Participation was Entered in the Unbridled Discretion of Defendants

The discretion of police officials here to grant or deny permission to speak

or attend a meeting is completely un-cabined and wholly lacking in guidelines or

standards. Does any criminal charge in Statham allow government to bar its

citizens from all meetings and public property? The Eleventh Circuit, reviewing

decisions on this issue, has held:

> Even a facially content-neutral time, place, and manner regulation may not vest public officials with unbridled discretion over permitting decisions. *See Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-51 (1969); *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130-31 (1992). Excessive discretion over permitting decisions is constitutionally suspect because it creates the opportunity for undetectable censorship and signals a lack of narrow tailoring. *See Forsyth County*, 505 U.S. at 130-31; *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1362 (11th Cir. 1999); *Miami Herald Pub. Co. v. City of Hallandale*, 734 F.2d 666, 675 (11th Cir. 1984) We readily conclude that the indemnification provision in the Augusta- Richmond Ordinance fails to provide adequate standards. It requires an indemnification agreement "in a form satisfactory to the attorney for Augusta, Georgia," § 3-4-11(a)(3), and gives no guidance regarding what should be considered "satisfactory." Thus, the requirement is standardless and leaves acceptance or rejection of indemnification agreements "to the whim of the administrator." *Thomas*, 534 U.S. at 324 (*citing Forsyth County*, 505 U.S. at 133).

*Burke v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1257 (11th Cir. 2004).

In *Langton v. State*, the Georgia Supreme Court both invalidated a blanket

ban on free speech activity on State of Georgia property, including the parking

lot at issue there, and invalidated trespass charges concluding:

> We agree, therefore, with appellant's argument that if she had a right under the First Amendment to the U.S.

> Constitution to engage in expressive activity at the time and place involved here, she could not be convicted of criminal trespass because the State would not be able to prove that she was present 'without authority.'

261 Ga. 878, 879 (1992). More recently, the Eleventh Circuit reiterated these principles in limited public fora, holding that a facially neutral policy was nevertheless likely to be applied in a content based fashion, and lacked clear timelines, such that the policy conveyed standardless discretion. *Barrett v. Walker Cty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017).

The criminal trespass ban at issue in this case is not premised upon adjudicated illegality, and Ms. Moore and Mr. McDaniel contend that they departed (when told to do so from a public area they had previously been given express permission to walk for the very purposes they were engaged in) such that criminal trespass could not even be claimed. Nevertheless, the unadjudicated bans on attendance and participation here are broad content based restrictions on speech in a limited public forum, require citizens to seek permission to speak to their representatives from police officers and officials who are possessed of no standards, and their duration is unknown and with uncertain geographic definition. The criminal trespass bans strike at the very heart of free expression, and cannot survive free speech review.

**E. The Bans Violate the Georgia Open Meetings Act**

-16-

The mandates of the Georgia Open Meetings Act are broad, and all persons are generally entitled to attend public meetings such as city council meetings. *See* O.C.G.A. § 50–14–1; *Jersawitz v. Fortson*, 213 Ga. App. 796, 446 S.E.2d 206 (1994) (reversing grant of summary judgment and finding citizen was improperly excluded from agency meeting); *Kilgore v. R.W. Page Corp.*, 261 Ga. 410, 411, 405 S.E.2d 655 (1991) ("We must bear in mind that the Open Meetings Act must be broadly construed to effect its purposes of protecting the public and individuals from closed-door meetings.").

The Georgia Open Meetings Act mandates explicitly that "[e]xcept as otherwise provided by law, **all** meetings **shall** be open to the public." O.C.G.A. § 50–14–1(b)(1) (emphasis added). Further, the Act provides that "[t]he public at **all** times **shall** be afforded access to meetings . . . . Visual and sound recording during open meetings **shall** be permitted." Id. at (c) (emphases added). These mandates are in support and furtherance of Georgia's strong public policy of government transparency and accountability. *See Red & Black Pub. Co. v. Bd. of Regents*, 262 Ga. 848, 854, 427 S.E.2d 257, 263 (1993) ("[T]he policy of this state is that the public's business must be open, not only to protect against potential abuse, but also to maintain the public's confidence in its officials."); *Athens Observer, Inc. v. Anderson*, 245 Ga. 63, 66, 263 S.E.2d 128, 130 (1980) ("The purpose is not only to encourage public access to such information in order that the

-17-

public can evaluate the expenditure of public funds and the efficient and proper functioning of its institutions, but also to foster confidence in government through openness to the public.").

The City Council meetings and committee meetings that Ms. Moore and Mr. McDaniel are barred from are unquestionably public meetings under the Act. *See generally* O.C.G.A. §§ 50–14–1(b), 50–14–1(d). Thus, the statute requires that members of the general public cannot be excluded from such meetings and a videotape is not an adequate substitute for compliance with the statutory requirements. *Jersawitz*, 213 Ga. App. at 799. No exception to the Open Meetings Act that might otherwise allow for a closed meeting or a ban is in anyway applicable. *See generally* O.C.G.A. §§ 50–14–3, 50– 14–4. Accordingly, an additional and alternative method of recovery for Ms. Moore and Mr. McDaniel is under the Georgia Open Meetings Act.

Plaintiffs are experiencing new and discrete injuries for each public meeting for which they are denied access.

III.   **PLAINTIFFS ARE SUFFERING IRREPERABLE HARM**

The second factor for the Court to determine is whether the Plaintiffs will suffer irreparable harm absent a preliminary injunction. The answer is simple: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373

(1976); *see also Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005). Plaintiffs are banned from all public property in Statham, and cannot participate in a variety of free speech activities.  Thus, they have and will suffer irreparable harm in the absence of an injunction.  *K.H. Outdoors LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citations and quotations omitted).

## IV.    AN INJUNCTION WILL NOT HARM DEFENDANTS

Issuance of the injunctions sought will not cause any harm to Defendants. A "city has no legitimate interest in enforcing an unconstitutional ordinance," *Id.,* and the City may employ various criminal statutes if any illegal activity were to happen in the future.

## V.    AN INJUNCTION IS IN THE PUBLIC INTEREST

The protection of free speech rights is always in the public interest, and the injunction sought here will assure Plaintiffs' rights. *Id.* ("'[T]here can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties.'" (citing *Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004)).

## CONCLUSION

For all the above reasons, Plaintiffs request that this Court consider and enter preliminary and permanent injunctions as set out in Plaintiffs' Motion.

This 15th day of October, 2018.


Respectfully Submitted,


*/s/ Gerald Weber*                            */s/ Zack Greenamyre*
Gerald Weber, Ga. Bar No. 744878       Zack Greenamyre, Ga. Bar No. 293002
LAW OFFICES OF GERRY WEBER, LLC        MITCHELL & SHAPIRO LLP
Post Office Box 5391                   3490 Piedmont Road, Suite 650
Atlanta, GA 31107                      Atlanta, GA 30305
404-522-0507                           404-812-4751
wgerryweber@gmail.com                  zack@mitchellshapiro.com

*Attorneys for Plaintiffs*

-21-

## CERTIFICATION OF COMPLIANCE

The undersigned, in accordance with L.R. 7.1 and 5.1 hereby certifies that the typefont used herein is 13-Point Book Antiqua.

This 15th day of October, 2018

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002